Gants, J.
On May 1, 1996, the plaintiff, Carlo Sostillio (“Sostillio”), was in the parking lot of Newton South High School (“Newton South”) when he was assaulted by unsupervised students. While retreating from this assault, he was struck by a vehicle driven by another unsupervised student in that same Newton South parking lot. Sostillio has filed this action against the defendant, the City of Newton (“the City”), alleging that it is liable under the Massachusetts Tort Claims Act, G.L.c. 258 (“the Act”), for its negligent supervision of the Newton South parking area. The City now moves for summary judgment. For the reasons detailed below, the City’s motion for summary judgment is ALLOWED.
The City seeks summary judgment on two independent grounds. First, the City contends that this negligent supervision claim is foreclosed under the Act by the discretionary function exemption of G.L.c 258, § 10(b), which provides that the Act “shall not apply to . . . any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee.” G.L.c. 258, § 10(b); Harry Stoller & Co. v. Lowell, 412 Mass. 139, 141 (1992). In determining whether an activity is immune from liability under the Act because it arises from the performance of a discretionary function, this Court must apply a two-step test. First, it must determine whether the City had any discretion to do or not to do what Sostillio claims caused him harm. Harry Stoller & Co. v. Lowell, 412 Mass. at 141. “(I]f the governmental actor had no discretion because a course of action was prescribed by a statute, regulation, or established agency practice, a discretionary function exception to governmental liability has no role to play in deciding the case.” Id. Second, it must determine whether the discretion at issue is of the kind for which § 10(b) provides immunity — whether it is “discretionary conduct that involves policy making or planning.” As a general rule, when the governmental conduct involves a “high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning, governmental entities should remain immune from liability.” Id. at 142 quoting Whitney v. Worcester, 373 Mass. 208, 218 (1977). “But, when that conduct ‘involves rather the carrying out of previously established policies or plans, such acts should be governed by the established standards of tort liability applicable to private individuals or entities.’ ” Id. at 142, quoting Whitney v. Worcester, 373 Mass. at 218.
In this case, viewing the allegations in the light most favorable to the plaintiff, Sostillio is alleging two sources of negligent supervision: (1) that the City acted unreasonably by failing to provide an adequate number of monitors to supervise the Newton South parking lot; and (2) that the monitors who were there, if any, were negligent in their supervision of the parking lot. The first allegation satisfies both prongs of the discretionary function exception so, even if true, it is immunized discretionary conduct outside the scope of the Act. Alake v. Boston, 40 Mass.App.Ct. 610, 612-13, rev. den., 423 Mass. 1105 (1996). There is no evidence that the number or placement of parking lot monitors was prescribed by any statute, regulation, or established agency practice. Rather, the allocation of teachers and monitors to provide adequate security on the School’s grounds was a policy decision within the meaning of § 10(b) and therefore exempt from suit under the Act. Id. (exempting from suit under the Act an allegation that the City provided too few adults to supervise children safely on a school trip).
The second allegation does not satisfy the second prong of the discretionary function exception because the conduct of teachers and monitors supervising a school parking lot is ministerial in nature and does not rise to the level of policy and planning. Id. at 613-14 (finding that allegation that the adults who supervised the children on a school trip did so negligently was not exempt from suit under the Act).
This second allegation, however, falls under another exemption in the Act — G.L.c. 258, §10(j), which exempts from the Act “any claim based on an act or failure to act to prevent or dimmish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer.” G.L.c. 258, §10(j). In Brum v. Town of Dartmouth, 428 *260 Mass. 684 (1999), the Supreme Judicial Court labored to make sense of the “interpretive quagmire” of G.L.c. 258, §10(j) as to when “a condition or situation” is “originally caused by the public employer” and therefore outside the immunity granted by this section. 428 Mass. at 692. The Court struggled to give meaning to the phrase, “originally caused by the public employer,” so that it did not swallow up the immunity intended in §10(j) but did not itself become meaningless sur-plusage. Id. at 692-96. The outcome of this struggle was the express endorsement of the Court’s earlier holding in Bonnie W. v. Commonwealth, 419 Mass. 122 (1994).
In Bonnie W., the plaintiff had been sexually assaulted by a person on parole release who was employed as a maintenance worker in the trailer park where she lived. Id. at 123. She sued the Commonwealth under the Tort Claims Act on two separate theories. First, she alleged that her assailant’s parole officer had been negligent in recommending her assailant for employment at the trailer park, thereby giving him access to the plaintiff inside her mobile home. Second, she alleged that the parole officer was negligent for failing properly to supervise her assailant. Id. at 125; Brum at 695. The Bonnie W. Court held that §10(j) barred her claim regarding the parole officer’s negligent failure to supervise, but did not bar her claim alleging the parole officer’s negligence in recommending the assailant for employment at the trailer park. Bonnie W. at 125; Brum at 696. Under the Brum Court’s interpretation of this decision, the parole officer’s failure to supervise “can be characterized only as failure to prevent the assailant from being in a position to attack the plaintiff,” and therefore was barred under §10(j). Brum at 696. The parole officer’s negligent recommendation of employment, in contrast, “was an affirmative act on the part of the officer that created a situation in which a sexual predator held a job giving him access to the keys to every trailer in the park,” and was not barred under §10(j). Id.
The allegation in the instant case can only be characterized as a failure to prevent the plaintiffs assailants and the reckless driver from being in a position to injure the plaintiff. There is no allegation that the City did anything that brought the assailants to the parking lot or that granted them special access to the lot.
It is wholly irrelevant if, as the plaintiff claims, the City was on notice of previous problems at the parking lot. In Brum, supra, the victim was stabbed to death at Dartmouth High School by three armed individuals, at least one of whom was not a student at the school. Id. at 686. Earlier that morning, there had been a violent altercation at the school involving two of the victim’s classmates and possibly the victim himself. After the altercation, the school principal detained the victim’s two classmates but, later that same morning, the assailants returned to the school and stabbed the victim to death. As a result of the victim’s death, the Administrator of Brum’s Estate brought suit against the Town of Dartmouth and several town and school officials, alleging that they were negligent in failing to maintain adequate security measures at the school and in failing to protect her son in the face of a known threat. Id. at 686-87. The Supreme Judicial Court, relying upon §10(j), found the alleged conduct to be exempt under the Act because the Town of Dartmouth and its officials did not “originally cause” the “harmful consequences” that led to the victim’s stabbing death. Id. at 692-93. Even though the Town of Dartmouth had notice that Brum may be in danger, it was not liable because it did not “originally cause” his death. Id.
Whatever notice the City may have had of any problems at the Newton South parking lot, it was far less specific than the notice that the Town of Dartmouth had in Brum. While there had been prior incidents in Newton South’s parking areas, the incidents were neither related nor identical. These incidents involved driving accidents common to parking areas; there were no incidents that were special or particular to Newton South. Further, in contrast with Brum, there were no other prior incidents involving Sostillio.
The fact of the matter is that the City did not originally cause the plaintiffs injury; at worst, it simply failed to prevent it. This is precisely the type of situation which the Legislature intended to exempt from liability under the Act when it enacted §10(j).
ORDER
For the reasons stated above, the City’s Motion for Summary Judgment is ALLOWED.